BRIARCLIFF LODGE HOTEL, INC., Respondent, *v.* CITIZEN-SENTINEL PUBLISHERS, INC., et al., Appellants.

BRIARCLIFF LODGE HOTEL, INC., Respondent, *v.* TARRYTOWN DAILY NEWS, INC., et al., Appellants.

BRIARCLIFF LODGE HOTEL, INC., et al., Respondents, *v.* WESTCHESTER NEWSPAPERS, INC., et al., Appellants.

BRIARCLIFF LODGE HOTEL, INC., et al., Respondents, *v.* THE YONKERS STATESMAN CORPORATION, Appellant.

(Submitted October 3, 1932; decided November 22, 1932.)

108

*Joseph Reeback* and *Herbert C. Gerlach* for appellants.
Defendants have pleaded in justification facts as broad
as the libelous charges made by the newspaper articles

and the Appellate Division erred in striking out as insufficient in law the defenses of justification. (*O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352; *Cafferty* v. *Southern Tier Pub. Co.*, 226 N. Y. 87; *Hays* v. *American Defense Society*, 252 N. Y. 266; *Foley* v. *Press Pub. Co.*, 226 App. Div. 535; *Naylor* v. *Variety, Inc.*, 180 App. Div. 763; *More* v. *Bennett*, 48 N. Y. 472; *Sullivan* v. *Daily Mirror, Inc.*, 232 App. Div. 507; *Kloot* v. *New York Herald Co.*, 200 App. Div. 90.) The liability of the hotel to the village municipal board and the latter's actions in regard thereto under its ordinance were matters of public interest and concern and were properly the subject of fair comment. (*Foley* v. *Press Pub. Co.*, 226 App. Div. 535; *Hoeppner* v. *Dunkirk Printing Co.*, 254 N. Y. 95.) The charges contained in the newspaper articles fairly and truly report the public proceedings of the village of Briarcliff Manor and are, therefore, properly the subject of a defense of privilege. (Civ. Prac. Act, § 337.)

*Alexander U. Zinke, L. Zinke* and *Charles W. Silver* for respondents. The complete defenses wholly fail to justify the libelous charges. Indeed, they are inconsistent with any plea of justification. (*Burnham* v. *Hornaday*, 130 Misc. Rep. 207; 223 App. Div. 218.) Libelous charges, imputing that plaintiffs are deliberately delinquent and indifferent taxpayers, threatened with a discontinuance of water supply, reported as a news item without basis in fact, are not fair comment as matter of law. The publications are defendants' own misstatements of fact to which the defense of fair comment does not apply. (*Bingham* v. *Gaynor*, 203 N. Y. 27; *Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144; *Burnham* v. *Hornaday*, 130 Misc. Rep. 207.) The publications are essentially libelous charges composed by defendants and are not true and fair reports of public proceedings entitled to privilege under section 337 of the Civil Practice Act. (*Vosbury* v. *Utica Daily Press Co.*, 105 Misc. Rep. 134;

*Smith* v. *Buffalo Times, Inc.*, 124 Misc. Rep. 495; 214
App. Div. 759; *Schaffran* v. *Press Pub. Co.*, 258 N. Y.
207.)

CRANE, J. As the first, second and third defenses set
up in the answers to these libel actions have been stricken
out, as insufficient at law, it is necessary for us to assume
their allegations to be true, in considering whether or
not they are the proper answers to the allegations in
the complaint. The following, then, is the narration
of facts according to which the defendants are to be
adjudged in libel.

The plaintiff conducted in the village of Briarcliff
Manor, Westchester county, a hotel known as Briarcliff
Lodge. For more than a year prior to the publication
alleged in the complaint it had purchased and used water
that it needed for its guests from the Municipal Board
of the village of Briarcliff Manor. This Board operated
the water supply system of the village and received and
collected pay therefor. Bills for water consumed were
sent in February, May, August and November for user
during the previous three months. Shortly after May
31, 1930, the Municipal Board sent to the plaintiff a bill
for $2,134.67 for water consumed by it during the three
months ending May 31st, and another bill, August 31,
1930, in the sum of $3,118.22, for the three months
ending August 31, 1930, and on November 30, 1930,
another bill for $2,268.03 for water used during the three
months ending November 30, 1930. At the time of the
alleged publication there was due from the plaintiff the
total sum of $7,520.92 for water used from March 1,
1930, to November 30, 1930, and the plaintiff still con-
tinued to purchase and use water up to the time of the
publication. An ordinance of the village of Briarcliff
Manor provided in part as follows: " If any charge for
water supplied is allowed to remain unpaid for a period
of six months from the date of said bill, then and in that

event, the Superintendent is authorized to discontinue the use of water to said premises, within ten days after the mailing of notice to that effect to the water consumer of said premises."

On January 10, 1931, the Municipal Board wrote to the plaintiff demanding payment. On January 12th the plaintiff wrote to Henry H. Law, the Mayor of the village, and asked him if it could not be arranged with the Municipal Board that said water bills be paid in installments. Law communicated by letter with the board, inclosing the plaintiff's letter. Thereafter, and on February 10, 1931, the Municipal Board held a meeting, discussed the bills, and directed a notice to be sent to the plaintiff, stating that if that portion of said water bills which was more than six months past due was not paid in ten days, the water supply to the plaintiff's premises would be discontinued, and also directed that the Mayor be advised accordingly.

On February 11th, the President of the Municipal Board sent a letter to Law informing him of this action taken by the Board at its meeting, and stated that if the plaintiff did not comply with the demand, its water supply would be discontinued. Law thereupon notified the plaintiff.

The Board of Trustees of the village at a meeting held on the evening of February 11, 1931 (which must have been after the publication in the case of Citizen-Sentinel Publishers, Inc.), read and discussed the letter of the Municipal Board to the Mayor and referred the matter to him at his request.

This is the full recital of the facts which we must assume was in the possession of the defendant newspaper at the time of its publication. It thereupon printed the following, which is said to be false and libelous. It must here be written in full, as we are obliged to make comparison between the facts and what the defendant published as the facts, with its comments:

"Lodge Facing Loss of Water. Owes Big Sum"
"Briarcliff Board Delivers Ultimatum. $2100 Bill
Must Be Paid"

"Briarcliff Lodge has been using Briarcliff water for
six months and hasn't paid a cent.

"The Lodge, nationally known for various things,
owes the Briarcliff Water Board just $2100, not a large
sum of money for that lodge.

"And if the Lodge fails to pay its bill in 10 days the
board will peremptorily turn the water off.

"And what will the Lodge do for its guests?

"That is a thing that isn't troubling the Municipal
Board of Briarcliff at all. In fact, members of the Board
aren't interested in what the Lodge will do. All they
want is the $2100.

"But it may trouble officers of the hostelry when they
receive the ultimatum of the Water Board, probably
today.

"The matter goes back to last Fall when the Lodge
failed to pay the first bill rendered for the season. The
officers ignored a subsequent bill and the Water Board
held its peace.

"But in these times of depression, $2100 is a lot of
money. If the Water Board permitted the Lodge to
continue using the water without payment, it will have
to collect $5200 by the end of the month, for another
bill will then be six months old. Which is also a lot of
money.

"So the Water Board is eagerly awaiting a reply,
preferably a check.

"Board members are certain that the situation will be
averted, and that the Lodge will pay its long past due
bill."

Let us make the comparison between the article and
the facts. The heading is true. The statement that
"Briarcliff Lodge has been using Briarcliff water for
six months and hasn't paid a cent," is also true. That

the lodge is "nationally known" is a puff and not a libel; and the statement "$2100, not a large sum for that lodge," is a financial compliment. We then have this statement: "And if the Lodge fails to pay its bill in 10 days the board will peremptorily turn the water off." This is not a statement of a fact so much as a prophecy of a future event; it is not a comment, but a statement of what the municipal authorities will do in ten days. Was it justified? We must assume that the newspaper had in its possession the ordinance giving the village the power to do this thing within ten days after mailing of notice. The newspaper also had before it the written notice sent the Mayor, and by him sent to the plaintiff. This notice from the Municipal Board to the plaintiff said that if the six months' water bills, past due, were not paid within ten days, the water supply to the plaintiff's premises would be discontinued. Here was the notice required by the ordinance and the newspaper was justified in printing what the notice said, or, in other words, to state, "if the Lodge fails to pay its bills in 10 days the board will peremptorily turn the water off." This is exactly what the Board did say it would do and the paper was merely publishing the Board's declaration. Here was action taken by an official body given as news to the public.

Next — "And what will the Lodge do for its guests?" — a most natural question and fair comment. Then we have this statement: "That is a thing that isn't troubling the Municipal Board of Briarcliff at all. In fact, members of the Board aren't interested in what the Lodge will do. All they want is the $2100." This is not a statement regarding the plaintiff, but relates to the attitude of the Board, and is a newspaper comment on their action. Continuing: "But it may trouble officers of the hostelry when they receive the ultimatum of the Water Board, probably today." Can we say as matter of law that such an aside in a newspaper article on

official action of a public matter is not fair comment or just criticism on the action of a delinquent taxpayer? The comment does not impress us as being at all unreasonable or unfair, but, rather, the result to be expected from such a notice, in view of all the circumstances, and the delay in paying the water charges.

Then comes the following: " The matter goes back to last Fall when the Lodge failed to pay the first bill rendered for the season. The officers ignored a subsequent bill and the Water Board held its peace." The claim of the plaintiff is that this is libelous because the word " ignored " means something more than " failed to pay." The innuendo is that it casts aspersions upon the officers of the plaintiff, indicating that they refused and neglected to pay any attention to another bill rendered to it. To make this a libel by any such innuendo is refining libel law beyond all means of practical application. Whether or not the word " ignored " was used in any such sense was at least a question for the jury to pass upon, and cannot be taken as libelous as matter of law.

Again, as we approach the end, we find these words: " But in these times of depression, $2100 is a lot of money." Who will deny it? " If the Water Board permitted the Lodge to continue using the water without payment, it will have to collect $5200 by the end of the month, for another bill will then be six months old. Which is also a lot of money." All of this is true. " So the Water Board is eagerly awaiting a reply, preferably a check." Can this be doubted? " Board members are certain that the situation will be averted, and that the Lodge will pay its long past due bill." A generous hope, reflecting a belief in the plaintiff's good, and not bad, intentions.

Thus analyzing the publication in the light of conceded facts, there is no libel in it, and, at most, the innuendo regarding the use of the word " ignored " creates a question of fact as to whether or not it casts any aspersion upon the honor or integrity of the plaintiff.

This answer, therefore, is good as a justification; it is good as fair comment, in the very meager instances where comment is made; and it is good as a fair and true report of official proceedings taken by the Municipal Water Board regarding the plaintiff's over-due bills.

The first, second and third defenses in the answer in this case against the Citizen-Sentinel Publishers, Inc., should not have been stricken out.

There are three publications and four libel actions coming up on this appeal. We have dealt here with the complaint in the action against the Citizen-Sentinel. Publishers, Inc., as being typical. Counsel have submitted the four cases as if they were one, and dealt with the points in only one brief. The other publications vary in literary style but not in substance. The Tarrytown editorial heads the article, " WHO PAYS FOR WATER? " and follows it with a philosophical utterance regarding the attention which individuals give to human affairs. As to the plaintiff, it says: " and still others, perhaps a larger class, reveal a remarkable listlessness to bills. According to dispatches Briarcliff Lodge is in the latter group in regard to the payment of water bills. Advices from the Water Board of that Village disclose that the Lodge is in arrears to the extent of $2,100 for water furnished since last Fall. And the Board advises further that unless the Lodge pays and pays that the water will be turned off."

The defendants in all these cases pleaded the same defenses. This latter publication is a true statement of facts with a brief comment on the failings of humanity generally. Nothing libelous here, which is not fully met by these answers.

The *Yonkers Statesman and Daily Argus* printed an article in which the heading is true, and facetiously stated in its news item " ' Water, water, everywhere, but never a drop to drink ' will be the cry at Briarcliff Lodge in a short while, according to the Briarcliff Manor Village Board, if Chauncey Depew Steele and his asso-

ciates at the exclusive and expensive hostelry do not pay their water bill." The rest of the article contains a fair comment and statement of the action of the Municipal Board.

By this comparison of the answers with the alleged publications it must be quite evident that the matter set up in defense was sufficient at law and should not have been stricken out. The payment of taxes is a matter quite vital to all of us. Where all are expected to pay on the due date, it is a matter of public concern, and surely of public interest, to know whether a large amount of taxes, especially in small communities, remains unpaid. To furnish the news upon these matters is the justification for the existence of a newspaper. These matters constitute news and may be printed, when accurately stated, with impunity. Village officers have a duty to perform which must be impartially administered. The fact that the press is ever ready to publish any irregularities or acts of favoritism has a tendency to keep officials up to the high mark of their calling. A water board, having the power to collect bills or turn off a supply of water, is a public official whose proceedings and action may not only be given as news, but, under section 337 of the Civil Practice Act, may be fairly and truly reported, without being libelous. And a fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated. True also is it that the action of such public officials, and the delay in the collection of taxes, are matters about which a paper, either in its news items or editorially, may make comments as long as they are fair and just. (*Hoeppner* v. *Dunkirk Printing Co.*, 254 N. Y. 95.) A comment is fair when it is based on facts truly stated and free from imputations of corrupt or dishonorable motives on the part of the person whose conduct is criticized, and is an honest expression of the writer's real opinion or belief. Mere exaggeration, slight irony or wit, or all those delightful touches of style

which go to make an article readable, do not push beyond the limitations of fair comment. Facts do not cease to be facts because they are mixed with the fair and expectant comment of the story teller, who adds to the recital a little touch by his piquant pen.

These actions against the individual, J. Noel Macy, charged him also, as editor and publisher of these various papers, so that what is here stated regarding the corporations, applies also to him and to his individual answers.

The orders of the Appellate Division, striking out the first, second and third complete defenses in the answers, should be reversed, with costs in this court and in the Appellate Division, and the questions certified by the Appellate Division should all be answered in the affirmative.

POUND, Ch. J., KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur; LEHMAN, J., dissents.

Ordered accordingly.