JOAQUIN MARTINEZ SAENZ, Plaintiff, *v.* NEW YORK TRIBUNE, INC., Defendant.

Supreme Court, Special Term, New York County, October 1, 1936.

*J. Justin Franco*, for the plaintiff.

*Sackett, Chapman, Brown & Cross* [*Harold L. Cross* of counsel], for the defendant.

COTILLO, J. This action is brought to recover damages for alleged libels uttered and published by the defendant. The plaintiff has pleaded two separate and distinct causes of action based on two separate statements published by defendant on different dates. The defendant, besides the usual denials, has set up two separate and distinct defenses and three partial defenses to each cause of action. The plaintiff has moved to strike out the separate and distinct defenses and also the partial defenses upon the ground that they are insufficient in law, and also moves to strike out certain allegations upon the ground that they are sham, frivolous, irrelevant, redundant, repetitious, unnecessary, impertinent, and may tend to embarrass the fair trial of the action.

The plaintiff alleges in his first cause of action that he is and has been for the past thirteen years an attorney and counselor at law duly admitted to practice before the courts of the Republic of Cuba, and in his professional capacity as a member of a well-known law firm has personally represented, besides many Cuban clients, important and well-known American and foreign banking and business firms engaged in international activities, with New York offices or branches or correspondents. On two different occasions and under two different governments he held the high office of Secretary of the Treasury of the Republic of Cuba, from which office he resigned in 1933. In addition, in March, 1933, he was an Envoy Extraordinary to the United States, representing the Cuban government in financial negotiations affecting both countries. He is also an economic adviser to the League of Nations, having been appointed to that office for three years in October, 1933. He claims further that by reason of his professional and official activities as above set forth and his close association and intimate contact with prominent individuals and corporations engaged in the various courts where he has practiced his profession, he has earned and acquired a reputation for honesty and fair dealing and a high standing in his profession, not only in the city of Havana but also in the city of New York and many other cities in the United States and abroad,

where the above-mentioned clients have their principal offices and branches or agencies. Plaintiff alleges that the defendant wickedly contriving and intending to cause it to be believed that the plaintiff as a man, a lawyer and in his capacity as Secretary of the Treasury of the Republic of Cuba and to injure him in his good name, fame, credit and reputation, did on the 23d day of June, 1935, falsely and maliciously publish of and concerning him in its newspaper the following false and defamatory matter:

" Saenz Indicted in Sugar Fraud
" By wireless to the Herald Tribune
" Copyright, 1935 — New York Tribune, Inc.
" Havana, June 22. Joaquin Martinez Saenz, former Cuban Secretary of the Treasury, and a dozen other persons, including former officials and sugar brokers, were indicted today by a special judge appointed by the government to investigate alleged sugar frauds. Saenz, who is president of the semi-fascist A. B. C. Society, is believed to be in New York, where he fled after resigning from the Cabinet several months ago."

Plaintiff further claims that in and by this publication the defendant meant and intended to charge and did charge that the plaintiff was dishonest as a man, a lawyer and public official, and that he had been indicted on a charge of having committed criminally and fraudulently acts in the aforesaid capacities, and further charged that the plaintiff, conscious of his guilt and fearing punishment, ran away from the Republic of Cuba and that because of his offenses he resigned his high office as Secretary of the Treasury of the Republic of Cuba. Plaintiff further claims that he was never indicted for the commission of any crime either in the city of Havana or anywhere else. He further charges that the said article concerning him was false, scandalous, malicious and defamatory and was known to the defendant to be so at the time it was printed and published by it, and was done maliciously, unlawfully and in wanton and reckless disregard of the plaintiff's rights.

The second cause of action differs from the first only as to the libel charged. In the second cause of action plaintiff pleads the following publication as a libel: " and in June, together with a dozen other public officials and sugar brokers, he [meaning the plaintiff] was indicted for alleged sugar frauds."

For an answer to the causes of action defendant admits that on June 23, 1935, it published in its newspaper the news item set forth in the first cause of action, but alleges that said matter was not published maliciously and denies, upon information and belief, the allegation of the complaint that plaintiff was never indicted in

Havana, Cuba, and also denies any knowledge or information sufficient to form a belief as to most of the remaining allegations.

As an affirmative defense, defendant further alleges the truth of the published item set forth therein and recites the existence of political, economic and social unrest in the Republic of Cuba, the plaintiff's activities in connection with a society known as the A. B. C., resulting in the downfall of various Cuban administrations, plaintiff's holding office under two of such administrations, plaintiff's flights to the United States after the downfall of the administrations, the filing of charges against the plaintiff herein and other Cuban officials by the Constitutional Army of the Republic of Cuba and by the Attorney-General of the Cuban Republic for defrauding the government and criminally participating in frauds connected with sugar and the collection and payment of taxes on sugar, in connection with which charges the plaintiff and the other officials charged were imprisoned and ordered to put up bail, the appointment of a special judge to try the plaintiff and the other officials charged with participating in such frauds, involving, besides sugar, alcohol, rice and other commodities, and other judicial proceedings alleged to constitute, in substance, an indictment of the plaintiff as that term was used and understood by defendant's readers.

For a second affirmative defense defendant claims that its news item constituted a substantially fair and true report of public, official, judicial proceedings, and that the publication thereof was, therefore, privileged.

For a first partial defense to the causes of action, defendant alleges that the matter in the news item it published was known to its managers and writers and was published without malice and in good faith as a matter of public interest, which said managers and writers had good reason to believe was true.

For a second partial defense defendant alleges that it based its news item in good faith on items published in the Havana newspapers *Diario de la Marina* and *El Pais*, both newspapers having a good reputation for truth and accuracy in the gathering and publication of news, and attaches translations of such items.

The third partial defense alleges that the substance of the matters stated in the news item set forth in the complaint came to defendant in the regular course of business, from sources which then and long prior thereto had maintained a good· reputation for truth and accuracy in the gathering and dissemination of news, and was published by defendant in good faith, with reasonable and probable cause for belief in and reliance upon the truth of the information furnished to defendant.

In support of its first affirmative defense, defendant sets forth in great detail the background of recent political events. The downfall of President Machado occurred in August, 1933, and was accomplished chiefly by the instrumentality of a secret society known as the A. B. C., of which plaintiff was a member. Upon the downfall of Machado, de Cespedes became Provisional President and plaintiff obtained the portfolio of Secretary of the Treasury. After a brief rule he was succeeded by Grau San Martin. His regime fell early in January, 1934, with the aid of revolutionary activities in which plaintiff participated from his temporary exile in the United States. Mendieta succeeded him, and continued in office until June, 1935. During the first part of that period, he resumed his position as Secretary of the Treasury. But quarrels soon broke out within the A. B. C. organization. Saenz resigned his post and found the United States a safer place of sojourn. During that period and preceding it, wide publicity was given to the upheavals in Cuba in all the newspapers of the United States, particularly in New York city.

In April, 1935, the Attorney-General of Cuba lodged a series of charges against the plaintiff, including those of defrauding the government to an amount exceeding $2,000,000 in connection with the payment and collection of taxes on sugar. He asked that Saenz, together with other persons, be prosecuted and imprisoned and ordered to put up a bond of $300,000. On April 11, 1935, the Criminal Division of the Supreme Court of Cuba issued a writ accepting the petition of the Attorney-General and ordering the charges to be referred to Dr. Anciano, magistrate of the Havana Superior Court, as special judge to prosecute the criminal case. Police Inspector Juan J. Llinas, appointed special investigator, reported on the charges and stated that the criminal responsibility of the accused was without doubt.

On or about May 16, 1935, search for the plaintiff having been ordered and he not having been found and in the course and as a part of said judicial proceedings and prosecution and preparation for trial of said criminal case there was duly published in the Gaceta Official, or Official Gazette, an official publication of the Republic of Cuba, an order, ruling, notice or communication, of which the following is a substantially correct translation:

" Judicial Power
" Tribunal of Sanctions
" Special Court

" Dr. Juan Valdes Anciano, Magistrate of the Court of Hearings (Audiencis) of this District, acting Special Judge, on this date in the suit No. 4/935 of the jurisdiction of the Criminal Office of the

Supreme Tribunal which is being instructed in Special Committee, for fraud and other crimes, has ruled that the accused be summoned by this means; General Alberto Herrara; Colonel Manuel Benitez, Carlo Garcia Avalos, former Director of the Treasury; Joaquin Martinez-Saenz, ex-Secretary of the Treasury; Rogelio J. Vega y Diaz, former first-class Head of the Department of Taxes on Sugar of Section 1½ per cent. and Consumption of the Office of the Secretary of the Treasury; and Jose Feria Alonso, Jose Macias Almeida, and Jose Alonso who, it appears, were trading in the Buying and Selling of Sugar with the object of having them appear before this Special Court, held at the offices of the Court of Hearings (Presidencia de la Audiencia) of Havana, in order to instruct them about the charges preferred against them in said proceedings.

" And for its publication in the Official Gazette of the Republic, I despatch this document in Havana, May 7th, 1935.

" J. A. ELCY RISCO,<br>
" *Judicial Secretary.*"

On or about June 22, 1935, in the course and as a part of said judicial proceedings, said Judicial Police Inspector Llinas, acting in the capacity above stated, duly prepared and rendered his accusing report relating to the rice fraud charges, which report the defendant intends to offer in evidence on the trial of this action and which was to the effect, among other things, that prior to September 1, 1934, rice was subject to customs tariff of $1.50 per 100 kilos and a consumption tax of one cent per pound or $2.20 per 100 kilos, or total tax of $3.70 per 100 kilos; that Decree-Law 440 of August, 1934, which took effect September 1, 1934, repealed the consumption tax and increased the customs tariff to $3.70 per 100 kilos, thus consolidating into a single tax the amount of the two previous taxes; that the fraud was perpetrated by unlawfully permitting rice which had come under the jurisdiction of customs prior to midnight on September 1, 1934, to be withdrawn after that time upon payment of the customs tariff of $1.50 per 100 kilos in effect prior to that time, but without payment of the consumption tax in effect prior to that time, thus illegally evading to the extent of $2.20 per 100 kilos the increased customs tariff of $3.70 per 100 kilos in effect at the time of withdrawal and thereby defrauding the government to that extent; that those against whom said accusation of crime and criminal responsibility had been established included, among others, the plaintiff and said de Guerdiola and that the funds of which the government was thus defrauded were divided between the officials who participated in permitting the illegal evasion of tax and the said A. B. C. revolutionary organization.

On or about June 22, 1935, the day preceding the publication of said news item set forth in paragraph fifth of the amended answer, said two accusing reports were duly submitted to said Special Judge Anciano. After due deliberation thereon and upon the other evidence and testimony before him, and in the course of and as a part of said judicial proceedings and the prosecution and preparation for trial of said criminal case, said special judge duly approved said reports, ordered the prosecution of the plaintiff and a number of other persons, including former officials and sugar brokers on said sugar fraud charges and announced their indictment thereon. Said judicial proceedings in said criminal case constituted in substance an indictment of the plaintiff as that term was used and intended to be used in, and as it was understood by the readers of, said news item.

The second affirmative defense, besides realleging the facts set forth in the first affirmative defense, further alleges that the news items constituted a substantial, fair and true report of judicial or other public and official proceedings, and that the publication thereof was and is privileged.

The first partial defense alleges, in addition to the facts set forth in the first affirmative defense, that the facts alleged in the first affirmative defense were known to the defendant and its editors and writers, and they became cognizant of them at or about the time of the occurrence of the facts and circumstances respectively and prior to the publication of the news items. These news items related to matters of public interest and importance in which the defendant, its editors and writers and readers of its newspapers and the public generally had an interest. That the news item was published without malice, in good faith and in the belief on the part of the defendant that it was true and it had reasonable and probable cause for such belief.

For a second partial defense, defendant refers to a news item published on April 13, 1935, in *Diario de la Marina* and two other news items published May 18, 1935, and June 22, 1935, in *El Pais* Both are alleged to be newspapers of good reputation for accuracy and truth, published in Havana. A translation of the news item is annexed to the defense. One of the items refers to the appointment of Dr. Anciano as examining justice to look into accusations by the district attorney of sugar tax frauds. It refers to Dr. Saenz as one of the accused. The other item also speaks of Dr. Anciano's proceedings in fraud charges against Saenz. The third specifically refers to Martinez Saenz as " indicted in the sugar matter " and an issue by the special judge of a " writ of indictment against Dr. Saenz."

The third partial defense pleads generally the care and accuracy of the defendant in collecting and disseminating news, and its publication of the article without malice and in good faith.

In passing upon that part of plaintiff's motion seeking to strike out as insufficient, all the facts alleged in the two affirmative defenses and the partial defenses must be taken to be true. (*Briarcliff Lodge Hotel, Inc.*, v. *Citizen-Sentinel Publishers, Inc.*, 260 N. Y. 106, 118; *Drake* v. *Hodgson*, 207 App. Div. 783.)

The first affirmative defense consists of the defense of justification on the ground of substantial truth and that the term " indicted " as used in the news dispatch printed in the defendant's paper was not the term used in the sense of our Code of Criminal Procedure or under Anglo-Saxon jurisprudence, but was rather a statement that the plaintiff had been charged by the courts of Cuba under the procedure in such cases existing under the laws of Cuba with the crime of sugar fraud. It did not assert that the defendant was guilty but merely was charged in Cuba with the crime. The plaintiff proceeds on the theory that as the defendant did not plead that the plaintiff was indicted in the strict literal and legal sense under American procedure and under section 254 of our Code of Criminal Procedure which mentions an indictment as an accusation in writing, presented by a grand jury to a competent court, it is insufficient. This theory is untenable since the defendant's news item dated at Havana obviously referred to proceedings in Cuba and specifically stated that the plaintiff was " indicted by a special judge appointed by the government." The balance of the allegations in this defense merely are historical background which would be material in proving the method of procedure in returning charges against persons the Cuban government intended to prosecute. Although the allegations in the defense are voluminous and detail in great respect the conditions that existed in Cuba and the steps taken to prosecute, nevertheless it meets the definition set forth in *Cafferty* v. *Southern Tier Publishing Co.* (226 N. Y. 87). In that opinion the Court of Appeals wrote: " The libel law is not a system of technicalities, but reasonable regulations whereby the public may be furnished news and information, but not false stories about any one. When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." The Court of Appeals had laid down the doctrine in *Fleckenstein* v. *Friedman* (266 N. Y. 19) as follows: " A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced."

A publication though libelous *per se* that a person has been arrested, indicted, judicially charged with a crime or otherwise subjected to judicial proceedings, is not actionable if he was arrested, indicted or so subjected.

As the pleaded defense under attack meets this definition, that part of the motion attacking the first affirmative defense is denied.

Taking up the second affirmative defense of privilege, the court holds this defense sufficient. A privileged report may consist of an abridged or condensed statement. (*Briarcliff Lodge Hotel, Inc.,* v. *Citizen-Sentinel Publishers, Inc., supra; Breslin* v. *Sun Printing & Pub. Assn.,* 177 App. Div. 92.)

As to the first partial defense, the defendant has realleged by way of partial justification and in mitigation of damages the facts pleaded in the defense of justification plus allegations that the news items were believed to be true and published without malice. Those facts are material as to proof of each of malice and are properly pleaded. (*Haffen* v. *Tribune Assn.,* 126 App. Div. 675; *Fleckenstein* v. *Friedman,* 266 N. Y. 19.) The motion seeking to strike out the denials as sham and frivolous is denied, as the affidavit submitted by plaintiff does not point out wherein the denials are sham. (*Fleischer* v. *Terker,* 259 N. Y. 60.) Motion denied.