OPINION OF THE COURT
Richard W. Wallach, J.
This libel action between lawyers is a curious fallout of the “Pothole Law” (Administrative Code of City of New York, § 394a-1.0, subd d) recently enacted by the City of New York (City).
The key issue on this motion by defendant to dismiss the complaint for failing to state a cause of action is whether the publication is protected opinion or libel. As this action shows, opinion differed with respect to the new law. From the judicial point of view it snuffed out at least one courtroom anomaly: how was it that in a “trip and fall” case the plaintiff’s spouse, brother-in-law or favorite bartender had scrupulously taken notice of the roadway defect for six months or more while the victim had invariably remained oblivious to its menace? Understandably, this sudden if unmourned death of the constructive notice witness in the public sector was not to be the preoccupation of the combatants here.
The die was cast when plaintiff, the suburban law firm of Gewurz & Gewurz, P. C. (Gewurz), undertook to resist the effect of the City “Pothole Law” with a somewhat ambitious project. Apparently, the firm took critical note of the new provisions in that law which would sharply restrict the liability of the City of New York in all sidewalk cases (and similar claims) by requiring written notice of the allegedly defective sidewalk or roadway as a condition precedent to the maintenance of an action. The *858 Gewurz firm understood that this amendatory legislation, long the vogue in.up-State municipalities, threatened a precipitous reduction in the number of tort suits that could successfully be maintained against the City.
The response of the Gewurz firm to this (in its view) ominous development was the initiation on the law firm letterhead of a new “service” for their fellow members of the Bar. In a form letter dated November 26, 1979, addressed to “To Whom It May Concern” and mailed to several hundred lawyers, Gewurz announced its proposal to create a massive data bank for the furnishing and proving of actual written notice to the City of sidewalk and roadway defects. In their form letter they invited lawyers to submit copies of all notices of claim that they had previously filed and further requested the addressee lawyers to take notice of defects near their offices, homes and elsewhere, and then to inform the Gewurz office of their location for written transmittal to the City.
The Gewurz form letter also made it evident that the enterprise was not to be exclusively an altruistic program for the benefit of the broken and maimed class now disinherited of their legitimate financial expectations. The form stated that for a fee of $150 if successful, or $50 if unsuccessful, Gewurz would report to any potential plaintiff’s lawyer either the good news, or bad news as the case might be, with respect to whether the insured party had a notice (good) or nonnotice (bad) case. As an added inducement to reportage co-operation, any “participating attorney” who furnished other pothole information in advance was assured a 10% discount when he utilized the service for a client. Presumably, Gewurz also stood ready to furnish additional service if required.
Whatever the reception of this Gewurz communication may have been elsewhere, clearly the reaction of defendant Bernstein, a member of the Bar with offices in Manhattan, was one of outrage. Bernstein addressed an indignant three-page letter dated February 14, 1980, in reply, the entire contents of which are annexed to Gewurz’ complaint. In addition to mailing his letter to Gewurz, Bernstein delivered copies thereof together with the Gewurz missive to the Grievance Committee of the City Bar Asso *859 ciation, the Ethics Committee of the State Bar Association, to the Honorable Edward I. Koch, and the office of the Corporation Counsel of the City.
The Gewurz rejoinder to Bernstein’s letter was this action seeking damages in the sum of $5,000,000. Presented for determination now by the court is defendant’s motion to dismiss the complaint for failing to state a cause of action.
The complaint alleges that the contents of paragraphs 2, 4 and 5 are libelous in that the contents thereof tend to disparage the plaintiffs in their profession as lawyers. Paragraph 2 of the Bernstein text complained of contains the following statement with reference to plaintiff’s proposal: “Nowadays such activity is generally regarded as inimical to the goals of public policy. In the old days, I believe that in one of its variations it was called champerty, a crime.”
Paragraph 5 of the letter complained of contains the following statement: “Worse yet, your service is analogous to that offered by the axle or transmission repair shop proprietor who has dug and then camouflaged a cavernous hole in the road in front of his establishment, so as to assure himself a ‘productive’ life.”
The instant motion to dismiss is carefully limited by the movant so as to exclude all questions of qualified privilege and lack of malice implicit in the landmark United States Supreme Court decision in New York Times Co. v Sullivan (376 US 254, 279-280), and its progeny. Defendant urges that the above-quoted language taken together with the letter as a whole is, on its face, an expression of opinion entitled to the cloak of protection under the First Amendment.
This court is unable to agree. It is settled law in New York that to accuse an attorney at law of stirring up and fomenting litigation is libelous per se (Kleeberg v Sipser, 265 NY 87; Weber v The Credit Office, 55 Misc 386). Certainly, it would be difficult to derive any other implication than such a charge from the quoted portions of defendant’s letter. Nonmalicious libel of a private individual is not facially protected by the First Amend *860 ment (Gertz v Robert Welch, Inc., 418 US 323). Furthermore it cannot be said that the Bernstein letter, in its entirety constitutes fair comment as a matter of law. As was stated in Julian v American Business Consultants (2 NY2d 1, 8), citing Briarcliff Lodge Hotel v Citizen-Sentinel Publishers (260 NY 106, 118): “A comment is fair when it is based on facts truly stated and free from imputations of corrupt or dishonorable motives on the part of the person whose conduct is criticized, and is an honest expression of the writer’s real opinion or belief.” (Emphasis added.)
The suggestion contained in paragraph 5 of the Bernstein letter, namely, that plaintiff’s conduct is analogous to a piratical garage which creates a trap for unwary passing motorists so as to generate broken axle repair business — is at the very least a charge of corrupt or dishonorable motive.
Thus this motion to dismiss must fail.
For the future course of this litigation, it is important to note what is neither reached nor decided by this ruling. This court expressly refrains from determining the question of whether plaintiff injected itself into a controversy involving a matter of public interest (Trails West v Wolff 32 NY2d 207; Twenty-Five East 40th St. Rest. Corp. v Forbes, Inc., 30 NY2d 595; Kent v City of Buffalo, 29 NY2d 818; Frink v McEldowney, 29 NY2d 720) and thereby lost the right to recover against defendant unless there is a showing of actual malice. There are indications that the parties were completely unknown to each other until the exchange of correspondence and that, therefore, a showing of malice may be difficult indeed. However, the resolution of that and other possible issues such as underlying truth can only properly be had after service of an answer.
Accordingly, defendant’s motion to dismiss the complaint is denied.