Bertram Harnett, J.
The fact that a featured newspaper article likely will never be in the running for the Pulitzer Prize, nor even be a model for a journalism workshop, is excusable. But, can it blithely knock a public restaurant? And in Yiddish, yet?
I. THE PUBLISHED STATEMENTS
An article headed “ The Eat-Out on Old Country Road ” was written by Stan Isaacs, a regular feature columnist for Newsday, a daily Long Island newspaper, and appeared in his May 3, 1971 column. It spun a yam of five couples, dubbed “ The Old Country Road Food and Wine Society Take-Out Restaurant Clambake ”, making a food sampling tour of 12 “take-out” restaurants located along a mile and one-half stretch of Old Country Road in Westbury, New York.
Isaacs described various experiences and anecdotes of tasting and commenting in each successive eating place, and in the “Gluttons’ Report” appearing in the center of the article presented a table of ratings for “ Food Quality ” and “ Food Quality Adjusted for Other Factors ”, in which Lollypop Drive-In (a restaurant owned by the plaintiff Steak Bit of West-bury, Inc., a corporation), was rated lowest on both scores, 12th out of the 12 places visited.
The article went on to describe the group’s cumulative assessment of its gourmet tour: “A spokesman for the negative said ‘ On the whole I thought it was a pretty unappetizing group of eating places. It was mostly all fake food, ground-up schmutz ’ ”, (Emphasis added.)
These statements are claimed by Lollypop’s owner to be libelous resulting in general damage to its goodwill and reputation. In their motion for summary judgment, Newsday and Isaacs place no reliance upon the literal truth of the .statements made, but they do claim that the article is light-humored and in no way reflects malice towards Lollypop or any other restaurant.
H. THE CONTESTED LANGUAGE DOES NOT ADD UP TO DEFAMATION
In order to be defamatory, a statement must convey a degrading imputation. (34 N. Y. Jur., Libel and Slander, § 7, p. 476; see O’Connell v. Press Pub. Co., 214 N. Y. 352.) In the case of claimed defamation of a corporation, the test is whether the published statement relates to its business ,so as to affect the confidence of the public and drive away its customers. (See Reporters’ Assn. v. Sun Print. & Pub. Assn., 186 N. Y. 437; *439 Isaacs v. Pan Amer. Trading Co., 7 A D 2d 757.) However, where, as here, special damages are not claimed (Drug Research Corp. v. Curtis Pub. Co., 7 N Y 2d 435, 441; Kings Creations, Ltd. v. Conde Nast Pubs., 34 A D 2d 935), “ mere disparagement of the quality ” of a product or service sold to the public is not libelous, in and of itself. (Marlin Fire Arms Co. v. Shields, 171 N. Y. 384.) The words written must go further than a bare opinion of quality. They must import that the supposedly libelling party is “ guilty of deceit or malpractice ”, or impute to him “ dishonesty, fraud, deception or other misconduct in his trade ”. (Le Massena v. Storm, 62 App. Div. 150, 154, 155; Harwood Pharm. Co. v. National Broadcasting Co., 9 N Y 2d 460, 463; Payrolls & Tabulating v. Sperry Band Corp., 22 A D 2d 595; Tracy v. Newsday, Inc., 5 N Y 2d 134.)
A. ANECDOTES AND QUALITY BATING
The sought humorous tone of Isaacs ’ article does not obscure the ostensible purpose of the tour — to evaluate in a casual and thoroughly lightheaded manner the quality of service and food in 12 neighborhood restaurants. The article itself reflects the purpose of conveying the restaurant ratings, as well as the amusing experiences of people on a party, to Newsday readers.
The low comparative evaluation of Lollypop in the “ Gluttons’ Report ” in the manner presented is essentially a statement about quality of food, service and “ other factors ” which, though uncomplimentary like the description “ pretty unappetizing group of eating places ”, is nonetheless devoid of any apparent implication of fraud or dishonest practice. Nor does the one statement made specifically about plaintiff, ‘1 A suggestion to try only the pinball machines at the Lollypop Drive-In was rejected for an order of fried clams ”, seem substantial in derogatory content.
The characterization of the tour, generally, as one of ‘ ‘ takeout ” restaurants is not believed defamatory as to Lollypop, which, as described in the complaint, is a “ Drive-In ”, has outdoor eating facilities and derives 10% of its business from take-out trade. Even were the characterization inaccurate, there is not a sufficient derogation in the “take-out” description to be defamatory of an eat-in place, particularly one which, by its own statements, is not ‘ ‘ like a fancy Manhattan restaurant ”.
B. SCHMUTZ AND BAKE FOOD
The statement which Lollypop most vigorously resents is the reference to the group of 12 places in these terms: “It was *440 mostly all fake food, ground-up schmutz”. (Emphasis supplied.) This is the crux of this case.
The words used reflect a lack of focus upon any one or several eating places. The general and somewhat vague terms used, “ mostly ” and “ on the whole ” indicate that some places visited were not subject to .the general condemnation of the “negative ” spokesman, although it is improbable that Lollypop, in view of its double low rating in the “ Gluttons’ Report ” could escape the impact of the description.
But, the fact that the article does not mention the plaintiff by name, does not render the statement free of libel if derogatory import may be fairly derived and attributable to Lollypop. (Harwood Pharm. Co. v. National Broadcasting Co., 9 N Y 2d 460, supra.) Moreover, in assessing content, it is immaterial that the author may not have intended a defamatory interpretation, since libel is judged by what the reader might reasonably understand the words to mean. (Cheatum v. Wehle, 5 N Y 2d 585, 594.)
“Schmutz” is a word in wide use in Yiddish parlance, although like many such expressions is also German in content. In generally accepted pronunciation, the word rhymes with “puts”. It means, “dirt, filth, smut, mud ” (new Oassel’s German Dictionary, p. 408 [1958].) In these times, Yiddish phrases enjoy a currency quite beyond any one cultural assemblage, although it must be noted that ‘‘ schmutz ’ ’ fails to make Leo Boston’s, The Joys of Yiddish (1968).
The real meaning of .the statements in the context of the article is not literal, but rather denotive of quality. If one labels food as “schmutz” or “fake food”, the impression created is that of1 unclean servings, a mixture of cheap or odd ingredients, and artificial taste. Apparently, in the opinion of at least some on the tour, the food eaten had these aspects.
In basic point, the statements objected to more closely resemble a graphic extension of the preceding generalized opinion by a “ .spokesman for the negative ”, stylistically dramatized by exaggeration and metaphor, that most of the food consumed was “ unappetizing In contrast, the article also mentioned that there was a positive side expressed on the tour. Hence, the words objected to, when fairly assessed in light of contemporary usage, do not impute to the corporate plaintiff any deceitful or fraudulent business practices. .
HI. “ PAIR COMMENT ” CAN BE PRINTED ABOUT A PUBLIC PLACE
Even assuming that the article had defamatory content, Lollypop, as a public facility, must show more than a published false *441 statement to recover. It must overcome the qualified privilege of fair comment which protects criticism of institutions serving the public. (Dolcin Corp. v. Reader’s Digest Assn., 7 A D 2d 449, 456.)
A. WHEN COMMENTARY IS NOT £ ‘ FAIR ’ ’
Under recent United States Supreme Court pronouncements, comment upon the activities of a public figure or private individual’s involvement in an event of public interest is constitutionally protected under the First Amendment’s guarantee of free speech and a free press. (Rosenbloom v. Metromedia, 403 U. S. 29.) Certainly, a restaurant which serves food to the general public is involved in an enterprise of public interest. (Twenty-Five East 40th St. Rest. Corp. v. Forbes, Inc., 37 A D 2d 546; see Matter of Figari v. New York Tel. Co., 32 A D 2d 434; Fotochrome, Inc. v. New York Herald Tribune, 61 Misc 2d 226.) Witness the State regulation and licensing of the standard and quality of food served (Agriculture and Markets Law, § 199-a; Public Health Law, § 1350), and laws as to admission of patrons. (Civil Eights Law, § 40; Executive Law, § 296.) Preservation of freedom to write about restaurants, to criticize or compliment, is another form of safeguard, and is a vital channel through which the public’s right to know is protected.
Therefore, commentaries in a newspaper about a public restaurant’s service and food even if false are immune from defamation liability unless a showing is made that the statements were motivated by malice or made with wanton disregard. (New York Times Co. v. Sullivan, 376 U. S. 254; Twenty-Five East 40th St. Rest. Corp. v. Forbes, Inc., supra; Garfinkel v. Twenty-First Century Pub. Co., 30 A D 2d 787, app. dsmd. 22 N Y 2d 970; All Diet Food Distrs. v. Time, Inc., 56 Misc 2d 821.) Unless plaintiff can show by ££ clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not” (Rosenbloom v. Metromedia, supra, p. 52), an action for libel will not lie. 1 ‘ Absent proof of false statements knowingly or recklessly made, .the recorded messages are entitled to the constitutional shield even if they exaggerate, vilify * * * and are false.” (Matter of Figari v. New York Tel. Co., supra, p. 447). On this motion, plaintiff must show evidence of actual malice or recklessness. (United Med. Labs. v. Columbia Broadcasing System, 404 F. 2d 706 [9th Cir., 1968], cert. den. 394 U. S. 921; Trim-A-Way Figure Contouring v. National Better Business Bur., 37 A D 2d 43, 46.)
*442 Since Lollypop does not cite any specific grudge or malice that defendants may have had in publishing the article, the presence or absence of malice or reckless disregard must be determined from the context of the article, its Jone and quality, the manner of its preparation, and the content of the specific statements made. (O’Connell v. Press Pub. Co., 214 N. Y. 352, supra; Cafferty v. Southern Tier Pub. Co., 226 N. Y. 87, 93; cf. Greenbelt Pub. Assn. v. Bresler, 398 U. S. 6, 10.)
B. ABSENCE OE MALICE OB BECKLESSNESS
Given a brief glance, the article reveals beyond peradventure that it as well as the tour was intended to be a witty and anecdotal experience. It is the adventurous tale of a latter day band of “ noshing ” Nader’s Raiders.
The style is entirely light and obviously meant to amuse. The article recounts how for example one £ ‘ wag ’ ’ on the tour facetiously observed that ££ There’s also a cemetery and a medical center on the route in case we need them”. The paragraph immediately preceding the claimed defamatory statements is indicative of the author’s intent to amuse: ££ Finally, after
three hours, the soldiers of gluttony straggled like G. Lee’s ragamuffins at Appomattox back to the [tour leader’s] home for evaluations. Some unpretentious 1971 Alkalaic|s were available ”.
"While reasonable people may disagree on whether Isaacs was successful in his purpose to achieve humor, there can be little doubt that his writing was meant by him to be funny, a mock heroic version of the food sampling escapade. (See Cohen v. New York Herald Tribune, 63 Misc 2d 87, 102; Grower v. State of New York, 23 A D 2d 506, affd. 19 N Y 2d 625; Briarcliff Lodge Hotel v. Citizen-Sentinel Pub., 260 N. Y. 106,118; Cowan v. Time, Inc., 41 Misc 2d 198.)
There is nothing to controvert Isaacs’ sworn statement in his deposition that he interpreted the ££ schmutz ” and££ fake food ” reference as ££ a joke intimating that the food wasn’t of the highest quality ”. The lack of specific derogatory reference to Lollypop, the general terms used, and the presentation of the complimentary view of ££ a spokesman for the positive ” are not indicative of malice. No showing is made of defendants’ actual malice, or an intent to injure.
Lollypop makes no showing that defendants knew the critical statements were false before publishing. That Isaacs himself may not have entered all the restaurants, including Lollypop, and instead relied in certain instances on the report of other *443 ¡members of the tour, does not show reckless disregard. A collective venture such as this necessarily entails reliance upon individual member opinions and there has been no showing that Isaacs knew or had reason to know that any member of the team was untrustworthy. (See Garrison v. Louisiana, 379 U. S. 64, 74; St. Amant v. Thompson, 390 U. S. 727.)
To defeat defendants’ motion for summary judgment, Lollypop must do more than rely upon conclusory allegations in the. complaint. It must show convincing evidentiary facts of actual malice (Rogou, Inc. v. Ally, Inc., 25 N Y 2d 943; Twenty-Five East 40th St. Rest. Corp. v. Fortes, Inc., 30 A D 2d 787, app. dsmd. 22 N Y 2d 970, supra; All Diet Food Distrs. v. Time, Inc., 56 Misc 2d 821, supra; Shapiro v. Health Ins. Plan of Greater N. Y., 7 N Y 2d 56, 64; Kremer Constr. Co. v. Garfinkel, 31 A D 2d 766). No such proof has been submitted.
In a motion for ¡summary judgment, the threshold test of showing malice or reckless disregard is vital to the enforcement of the constitutional privilege of fair comment. Without the demonstrated presence of these elements, the publisher should not be burdened with a full trial and its consequent inhibitory effect upon future exercise of free speech and press. (See Bon Air Hotel v. Time, Inc., 426 F. 2d 858, 864.)
It is true that an injury may be caused by a published false but nonmalicious statement which, protected under the umbrella of free speech, is not actionable. But, this reflects the constitutionally imposed burden of benefitting from public patronage in a free society. Were it otherwise, the resulting inhibition of free expression would insulate officials and public bodies and places from public scrutiny. (Greenbelt Put. Assn. v. Bresler, 398 U. S. 6; Gilterg v. Goffi, 21 A D 2d 517, affd. 15 NY 2d 1023.)
IV. CONCLUSION
The Isaac newspaper article is not defamatory in content. Even if it were, it would be constitutionally protected by the shield of fair comment, since malice or recklessness is in no way established or to be reasonably inferred from the facts presented.
Defendants’ motion for summary judgment is granted dismissing the complaint pursuant to CPLR 3212.