294 S.E.2d 70

**HAVALUNCH, INC.**

v.

**Mary MAZZA.**

No. 14900.

Supreme Court of Appeals of West Virginia.

Dec. 11, 1981.

Disqualification In Extenso July 8, 1982.

Robert E. Douglas and C. Page Hamrick, III, Charleston, for appellant.

Kenneth E. Kincaid, Morgantown, for appellee.

NEELY, Justice:

In 1973 Mary Mazza was a student at West Virginia University where one of her extra curricular activities was to serve as a paid newswriter for the *Daily Athenaeum*, which is the University sponsored, student newspaper. Miss Mazza was assigned to write a tongue-in-cheek, humorous review of Morgantown restaurants.

In the course of executing this assignment Miss Mazza visited the Havalunch, a Morgantown restaurant *cum* diner which served the university community as well as the public in general. This was Miss Mazza's first visit to the Havalunch and the record shows she harbored no ill feeling, ill will, or malice toward that establishment. She ordered a bacon, lettuce and tomato sandwich which she found not at all to her liking. The bacon was overcooked, the bread was dry and the lettuce had wilted. While ingesting her sandwich, she observed the atmosphere and her careful gaze remarked the amblings of one peripatetic roach. The roach did not enhance the overall ambience provided for the enjoyment of her food, so she left half her sandwich uneaten and departed the Havalunch with the opinion that it was not an establishment which she would recommend to a friend. Miss Mazza ultimately produced her assigned article entitled *Good Time Guide-Movers, Booze, Food Abound at Night Spots*. In this article more than twenty Morgantown establishments were reviewed, including the following statement about Havalunch:

HAVALUNCH—Bring a can of Raid if you plan to eat here. And paint your neck red; looks like a truck stop. You'll regret everything you eat here, especially the BLT's. 164 Pleasant Street.

Havalunch, apparently, did not receive the article in the spirit of good fun in which it was intended and was, in fact, quite piqued by what appeared to it to be a defamatory characterization of its operation. Havalunch sued for libel in the Circuit Court of Monongalia County and re-covered a $15,000 judgment against Miss Mazza divided by the jury as follows: "general damages $0; punitive or exemplary damages $15,000." We believe that the jury failed to understand the instructions of the court and that the court erred in not directing a judgment for the defendant notwithstanding the verdict. We reverse.

During the trial of this case the plaintiff, Havalunch, presented evidence that the clientele of Havalunch consists primarily of downtown business and professional persons during the day and of students and elderly persons at night. In this fashion plaintiff sought to rebut the defendant's characterization of the restaurant as a "truck stop" and further introduced testimony that the food was good and consistently well regarded by the restaurant's customers. Nonetheless, there was no evidence in the record that the defendant reporter did not: (1) observe a roach; (2) receive a mediocre sandwich; and, (3) formulate the subjective impression that the restaurant seemed like a truck stop.

# I

■ We are now required to embark upon an area of the law which has been in a state of total confusion since the United States Supreme Court decided *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *Sullivan* and its progeny have placed a first amendment, free speech gloss upon all prior law of defamation. *See Sprouse v. Clay Communications*, 158 W.Va. 427, 211 S.E.2d 674, *cert. denied*, 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107 (1975). The cases decided by the United States Supreme Court in the wake of *Sullivan* appear to imply a first amendment defense to libel and slander which is in direct proportion to the social need for the type of communication from which the defamation action proceeds. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). Thus, the first amendment defense in its strongest form concerns communications about a public official or candidate for office be-

cause of the need for full, robust, and unfettered public discussion of persons holding or aspiring to offices of public trust.

Next in the hierarchy come public figures who, while not elected officials, are concerned with undertakings in which the public as a whole has an interest. *E.g., Curtis Pub. Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Finally there are private persons who are not usually in the position of "public figures" but who have been thrust into the center of an issue of public concern for a moment, either voluntarily or involuntarily. *See Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). With respect to persons or businesses which do not fall into any of the three categories above, the states are free to adopt the common law of defamation as long as they do not impose liability without fault. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

■ While the United States Supreme Court permitted the states to adopt their own standards of liability in defamation actions brought by private persons against media defendants, they have severely limited the damages permissible in those actions. Presumed damages and punitive damages in such cases may be recovered only when a plaintiff has shown that the defendant knew the reported information was false or had a reckless disregard for its truth. *Gertz*, 418 U.S. at 348–50, 94 S.Ct. at 3011–12.

Applying the currently formulated laws of defamation to the facts in this case we must reverse. While we find the plaintiff restaurant to be a private person needing to prove only negligence, we find that the article in question is protected under the doctrine of fair comment. Furthermore, we find that a verdict awarding $15,000 punitive damages without a showing of malice as defined in the law of libel, must fail under the holding in *Gertz*.

Had this case been one in which the defendant had been *negligent* in printing defamatory matter concerning a private person, we would still reverse. In this case

punitive damages were awarded in the absence of proof of either the defendant's knowledge of the falsity of the published matter or the defendant's reckless disregard as to its truth. Punitive damages in such a case may not be awarded. The *Gertz* court explained the rationale for this prohibition by stating:

> [J]ury discretion to award punitive damages unnecessarily exacerbates the danger of media self-censorship, but, ... punitive damages are wholly irrelevant to the state interest that justifies a negligence standard for private defamation actions. They are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.

418 U.S. at 350, 94 S.Ct. at 3012.

## II

It would be easy to dispose of this case on the issue of punitive damages alone, but since there are other errors assigned which present significant issues made uncertain in our State law since *Sullivan, supra*, we feel an obligation to the bar to adumbrate this Court's direction in the law of defamation where the United States Supreme Court has left discretion to the state courts and legislatures to formulate the rules.

■ It is a close question whether a restaurant within one small university city where conceivably 20,000 persons routinely resort to public facilities is engaging in a business of sufficient public concern to place it in the "public figure" or "public issue" category. The Supreme Court's test for whether someone is a public figure in the context of a defamation suit was set out in *Gertz*:

> For the most part those who attain this status have assumed roles of special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public contro-

versies in order to influence the resolution of the issues involved. 418 U.S. at 345, 94 S.Ct. at 3009.

In the wake of *Sullivan* and *Gertz* other jurisdictions have found restaurants which cater to the public and solicit published reviews to be public figures for purposes of proving defamation. *See, e.g., Mashburn v. Collin*, 355 So.2d 879 (La.1977); *Steak Bit of Westbury, Inc. v. Newsday, Inc.*, 70 Misc.2d 437, 334 N.Y.S.2d 325 (1972). However, since Havalunch is a small restaurant in a community with a large number of other restaurants along with state-supported, university cafeteria facilities, we conclude that this restaurant is not of sufficient public concern to warrant its removal from the normal status of "private person" entitled to all of the protections which the common law of defamation provide. It neither solicits reviews nor does it hold itself out, unlike the restaurant in *Mashburn, supra*, as a place of particular interest or culinary quality.[1]

### III

■ The primary defense to this action has been a combination of "truth" and "fair comment." The plaintiff does not directly challenge that the defendant either observed a roach or was served a bad sandwich; the plaintiff maintains only that defendant took unfair license with the facts and that the overall characterization of Havalunch conveyed the false impression that vermin were pervasive and all food was of poor quality. The plaintiff maintains that if defendant had merely stated her observations, truth would have been a defense; however, because she went beyond her observations and disparaged the restaurant in a fashion which was unjustified by the three things which she observed, the defense of truth is inapplicable. The thrust of plaintiff's case then is that defendant presented defamatory conclusions unsupported by the facts and extending far beyond any inference which a reasonable person could draw from the facts observed. We disagree.

Even the plaintiff appears to concede that the defendant reporter presented her *opinion* of the overall ambience and quality of the restaurant. She certainly did not allege explicitly that vermin were pervasive and that she had sampled large amounts of food, all of which was of poor quality. The question, therefore, is whether she implied the existence of facts known to the reporter but undisclosed in the story which would lead inevitably to a false, but defamatory conclusion in a reasonable reader. We conclude that the entire purport of the story was the assertion of opinion based upon reasonable evidence. There was no implication that ominous, yet undisclosed facts lurked in the darkness. The reporter's overall disparagement was only her opinion.

This brings us then to defendant's assertion that her humorous characterization of Havalunch is protected by the doctrine of "fair comment." Since her story purported to be nothing but her opinion, she contends that because her conclusions were stated in humorous terms does not detract from the legitimacy of her overall impression that Havalunch was a poor place in which to eat. Essentially, the fair comment argument is that if she had merely said: "I believe that Havalunch serves poor quality food, has a clientele who look like 'red necks,' and has vermin," her opinion would have been protected. Opinion, she argues, does not suddenly become defamatory because it is expressed with either humor or a touch of style. We basically agree.

We have never had a case directly on this point in West Virginia, and while there are numerous old West Virginia defamation cases from which we could draw by loose analogy, the issue is sufficiently unique that the better course is to adopt the majority rule on this discrete subject as it has been articulated elsewhere in the American law. A good point of entry is the Restate-

---

**1.** While the court in *Mashburn* did not explicitly hold the restaurant to be a "public figure," it nonetheless held the plaintiff to a knowing or reckless standard which implied public figure status.

ment (Second) of Torts, § 566 (1977) which states:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

The official commentary to this section specifically addresses humorous presentations of opinion based upon observed facts. Section D of the commentary says:

> Ridicule. One common form of defamation has been ridicule that exposes the plaintiff to contempt or derision. Humorous writings, verses, cartoons or caricatures that carry a sting and cause adverse rather than sympathetic or neutral merriment may be defamatory. But the distinction drawn in comment B is applicable to ridicule if all the communication does is to express a harsh judgment upon known or assumed facts, there is no more than an expression of opinion of the pure type, and an action of defamation cannot be maintained. For maintaining the action it is required that the expression of ridicule imply the assertion of a factual charge that would be defamatory if made expressly.

We note that § 566 of the original Restatement of Torts was amended in the Restatement (Second) to reflect the dictim of *Gertz*. The original section stated that a defamatory communication could consist of a published opinion based on stated or commonly known facts. Hence, a plaintiff could recover both for a defendant's harsh opinion and for the expressed facts on which he based his opinion. However, when the *Gertz* court proclaimed that "Under the First Amendment there is no such thing as a false idea," 418 U.S. at 339, 94 S.Ct. at 3007, all this changed. While *Gertz* still permits recovery for defamatory facts, the Court reasoned that offending opinions are best combated with competing ideas. *Id.* Recognizing the holding in *Gertz*, the new § 566 permits recovery for an opinion only when the opinion is given without a recitation of the facts on which it is based. *See* Restatement (Second) of Torts, § 566, Comment c (1977).

■ In the case before us the court charged the jury as follows:

> The court instructs the jury that fair comment is a form of qualified privilege applied to news media publications relating to discussions of matters which are of legitimate concern to its news community as a whole, because they materially effect interests of all its community. "Fair comment" extends not only to expressions of opinion, but likewise to false statements of fact, unless made with actual malice.

> The court instructs the jury that comment is "fair" when based on facts truly stated and free from imputations of corrupt or dishonorable motives on part of person whose conduct is criticized, and where it is honest expression of writer's real opinion or belief. Mere exaggeration, slight irony or wit, or all those delightful touches of style going to make article readable, do not push beyond limits of fair comment.

This is an accurate statement of the law except for the phrase " 'fair comment' extends ... likewise to false statements of fact, unless made with actual malice." That is not true in this case because this restaurant is a "private person" and can recover if it can prove negligence. The language "mere exaggeration, slight irony or wit, or all those delightful touches of style going to make article readable, do not push beyond the limitations of fair comment", comes directly from *Briarcliff Lodge Hotel v. Citizen-Sentinel Publishers*, 260 N.Y. 106, 183 N.E. 193 (1932) which has been relied upon frequently elsewhere and is an accurate statement of the law.

### IV

While the plaintiff Havalunch does not, in our opinion, rise to the level of a public figure which would require it to prove that false statements were published either with actual knowledge of their falsity or with reckless disregard to whether they were true or false, there must at least be a showing that the defendant's news story

involved some element of negligence. *See Gertz, supra.*

■ We find no such element of negligence present in this case. While the facts forming the foundation for the reporter's story were not disclosed, they were sufficient for her reasonably to formulate her opinion that the Havalunch was not a restaurant suitable for student resort and her presentation of that conclusion through the techniques of humor and ridicule was protected by the common law doctrine of fair comment. Where there are facts which would lead a reasonably prudent person to formulate a harsh conclusion, the facts need not be disclosed and the statement of opinion becomes actionable only when nonexistent facts are implied.

While the old case of *Wilson v. Sun Publishing Company*, 85 Wash. 503, 148 P. 774 (1915), holds to the contrary, the entire weight of modern authority is that reasonable latitude in humor and style is accorded newspaper reporters in writing reviews of restaurants. *Mashburn v. Collin*, 355 So.2d 879 (La.1977); *25 East 40th Street Restaurant Corp. v. Forbes, Inc.*, 30 N.Y.2d 595, 331 N.Y.S.2d 29, 282 N.E.2d 118 (1972).

We include as much of the total story on Morgantown restaurants as was submitted to us in Appendix A of this opinion because it illustrates that Havalunch was not singled out for special treatment; the total tone of the story was one of humor and overstatement which would be obvious to any reasonable reader. No actual malice was demonstrated in the record and certainly no reasonable person could infer malice from the story taken in its totality. Consequently, we hold that the trial court erred first in failing to direct a verdict for the defendant as a matter of law and, thereafter, in failing to enter a judgment notwithstanding the verdict in defendant's favor.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded with directions to enter judgment for the defendant.

Reversed and remanded.

## APPENDIX A—

## GOOD TIME GUIDE

Movers, Booze, Food Abound at Night Spots

By Mary Mazza

Athenaeum Staff Writer

Wanna dance? Eat? Get drunk? Well, you've come upon "The Morgantown Good Time Guide," of what to do in college (without your parents ever finding out).

Alphabetically:

ACROPOLIS RESTAURANT

"Nick's," high booths keep you from seeing those good lookin' chicks. So, stand up if "Suzie" is your type. Good service—hot dogs, subs, and good for TGIFn'; 174 Willey St.

BASKIN-ROBBINS—Who'd believe that ice cream could be so delicious? New flavors (31) each month—"Hold that Lime" during football season. Cute and cool inside. 747 Chestnut Ridge Rd.

BONANZA SIRLOIN PIT—Towers people have all the luck. Far out unless you're hiking. Chestnut Ridge Rd.

CANTEEN LUNCH—across from Boreman; convenient, small midnight snack place; good subs, 514 N. High St.

CAPRI PIZZERIA—"home of the flying pizza;" atmosphere conducive to eating—you can't see what's in front of you. The pizza is good, drips a little. In fact, every extra falls off when you pick it up. Practice your Italian here. 2183 University Avenue.

CASTLE—beer, women, song; good for dancing, TGIF, weekends, even "special" nights—cheap drinks. One of the more famous bars on campus. 172 Forest Ave.

CHICO'S—super crowded after football games and on Sunday evenings. Good hot dogs; their specialty is ice cream—one dish has seven scoops. 331 Beechurst Ave. closed down years ago. Greasy kid stuff—hot dogs, hamburgers. Go there only if desperate. 441 Brockway Ave.

DRAGAN STEAK HOUSE—downtown on High St. Mundane setting, cafeteria style. Good for hard-to-find meat.

FLAME STEAK HOUSE—wire home for money before making reservations for Homecoming. Superb cuisine; ritzy joint, very plush. Old-home atmosphere. 76 High St.

HAVALUNCH—Bring a can of Raid if you plan to eat here. And paint your neck red; looks like a truck stop. You'll regret everything you eat here, especially the BLT's. 164 Pleasant St.

KENTUCKY FRIED CHICKEN—Visit the Colonel for the same ole fare—chicken and cole slaw. Best balanced meal you'll get on Sunday nights.

MARIO'S PIZZERIA—cute, clean-looking; fluorescent lights and new paint job give it pizza atmosphere. 2920 University Ave.

NAPOLI PIZZA PARLOR—all kinds of beer, but not much on the pizzas. Even seniors don't know where it is at. 1159 Van Voorhis Rd.

OLD MILL CLUB—interior decorator got $24,000 to do the french provincial inside. Rich people can afford the good food and drinks. 735 Chestnut Ridge Rd.

OWL'S CLUB—ahem. If you're bar-hopping, go here first and get it over with. Carry a gun; wear a hat and pin-stripped [sic] suit. Dark bar, sleazy-looking. Walnut St.

PAVONE'S—never crowded; square pizza. Good for Italian Food. 537 Beechurst Ave.

NOAH'S CAFETERIA—one (plastic). 499 High St., 2017 University Ave.

PIZZA INN—pre-fab crust—stick to the great salads. Dark beer for professionals. Nice place to eat. Near Hills. Morgantown Plaza.

PIZZERIA ITALIA—Stop here after working up an appetite dancing at the Castle. Pool tables, pinball machines, delicious pizza. Talk with your hands and maybe you'll get a free pizza.

RED CELLAR—Strange people, strange place look for drama majors. Dark and weird Beechurst Ave.

RICHWOOD AVE. CONFECTIONERY—"Mario's" Beer is served in fishbowls, frosted and cheap. Good place to watch football games on TV. 704 Richwood Ave.

RUFFSTONE—nice place to talk or fall down if you get too drunk. Dark, old, easy to meet people, especially other freshmen. 1 Wall St.

STADIUM INN—"Sleepy's" pinball machines, good for hamburgers (65 cents), french fries, and chili dogs. Summit's Touch Hole Alley has conventions here. 2117 University Ave.

2001 LOUNGE—good bands, juke box friendly . . . .

*Disqualification In Extenso*

McGRAW, Justice:

I recuse myself from the consideration and decision in this case because, to be highly technical, I have had positive professional relationships with the litigants.

I respect Mary Mazza Hendricks, who, in my personal knowledge, is a competent, dedicated professional, as evidenced by her work on the *(West Virginia University) Daily Athenaeum* from 1973 to 1974, and on the *Weston Democrat* from 1974 to the present. She and I have different recollections of the Havalunch.

When I was a student at the West Virginia University College of Law, I often ate at the Havalunch, a restaurant which economists would call "a mom and pop operation." The Havalunch lives vividly in my memory. I recall an eating establishment with standards of service and hygiene beyond reproach. I recall Mr. Veasey, quiet and friendly, at the cash register. I remember the delicious meals served at the spotless, immaculate, formica-covered, diner-type counters by cheerful waitresses in starched white dresses and mitres, well supervised by Mrs. Veasey.

I have fond memories of delectable slices of apple, peach, lemon meringue, butterscotch and coconut cream pie. In addition to these delightful pastries, hearty, deli-

cious meals of roast beef, ham, meat loaf or brown beans with tasty, attractive vegetables were consumed by countless students. As a compliment to every meal, ice cold sweet milk came from shiny stainless steel dispensers, and homemade light bread was sliced from large round loaves. For those who liked it, sweetened northern style corn bread was also baked.

From Havalunch ovens came cakes for the Happy Birthday Company, a successful business which helped finance my legal education. *See* R. Earle, *Working man's judge a closet capitalist*, The Charleston Gazette, December 2, 1981, at 12C. The cakes produced for the Happy Birthday Company delighted many students, some of whom were entertained by appropriate song.

I honor Mr. and Mrs. Veasey, the proprietors of Havalunch. These good and serious people were devoted to producing efficiently, and serving courteously, wholesome and nutritious food in a clean and cheerful atmosphere at prices college students could afford to pay. With Havalunch, the Veaseys made a great contribution to their fellowfolk.