Michael KINNEY, Plaintiff,

v.

J.D. DANIELS, et al., Defendants.

Civ. A. No. 81–3142.

United States District Court,
S.D. West Virginia,
Huntington Division.

Nov. 3, 1983.

James Allan Colburn, Baer, Napier & Colburn, Huntington, W.Va., for plaintiff.

William C. Beatty, Thomas Gilpin, Huntington, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

The Plaintiff brings this diversity action against the Cabell Huntington Hospital and Dr. J.D. Daniels, the Chief of the Hospital's medical service, seeking to recover monetary damages for common law and statutory defamation. Currently pending before the Court is the Defendants' motion for summary judgment, pursuant to *Rule* 56(b), Federal Rules of Civil Procedure. Inasmuch as the Plaintiff has failed to respond to the aforementioned motion within the time frame established by the Court's prior Order of July 22, 1983, the Court has deemed the Defendants' motion to be ripe for decision. After having thoroughly considered the aforementioned motion, filed September 30, 1983, the Court hereby grants [1] the same and directs the Clerk to remove this action from the Court's docket.

### I. *Undisputed Facts*

Commencing in calendar year 1979, and at all times relevant hereto,[2] the Plaintiff was an associate [3] member of the Hospital's medical staff. As a nephrologist,[4] Kinney was within the internal medical section of the medical staff and was under the supervision of the staff's chief of medicine.[5] At all times relevant hereto, the Defendant, J.D. Daniels, was the Chief of the Hospital's medical service. As such, Daniels was responsible for supervising the professional activities of the medical service staff members. In his supervisory capacity, Daniels was authorized to request consultations on a patient who, in his opinion, was receiving less than optimal care by the attending physician, and was responsible for reporting to the medical staff's ex-

1. "This Court will grant summary judgment 'only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law ... and the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence.'"
*Prete v. Royal Globe Insurance Co.,* 533 F.Supp. 332, 333 n. 2 (N.D.W.Va.1982) (citations omitted).

2. *See* Exhibits 1, 2, 3, 4, 5, 6, 7, 8 and 9, attached to Raymond Champ's affidavit in support of the Defendants' motion for summary judgment.

3. During calendar year 1981, the Plaintiff was placed on probationary status due to his failure to attend the requisite number of medical section staff meetings. The Plaintiff's placement on probationary status, however, did *not* result in a reduction of his clinical privileges at the Hospital during 1981. *See* Exhibits 7, 8 and 9, attached to Raymond Champ's affidavit in support of the Defendants' motion for summary judgment.

4. *See* Exhibit 1, attached to Raymond Champ's affidavit in support of the Defendants' motion for summary judgment.

5. *See* Article V, Section 1a and Article V, Section 3, subsection 2 of the Bylaws of the Hospital's Medical Staff, attached to Raymond Champ's affidavit as Exhibit 10 [hereinafter Bylaws].

ecutive committee on the performance of medical service staff members.[6]

In early December, 1980, Daniels reviewed the manner in which the Plaintiff was treating Severna Rogers. Upon doing so, he discovered that the Plaintiff was considering placing Rogers on hemodialysis. Daniels' disagreement with the propriety of placing Rogers on dialysis prompted him to discuss the matter with the head nurse of the Hospital's Intensive Care Unit, who informed him that the Plaintiff had treated several other similar patients in the same manner. In response to Daniels' further inquiries, the nurse reviewed the Intensive Care Unit's log and referred Daniels to the Plaintiff's treatment of Susi Stroud, Brydell Neal and Eugene Duke.[7] Shortly thereafter, Daniels appointed Drs. Maurice Mufson, Surendra Sharma and D.S. Clark to review the Plaintiff's treatment of Stroud and Neal, who had both been placed on hemodialysis, and of Rogers and Duke, who had been considered for such treatment.[8] In particular, Daniels solicited their "opinion as to the skill and judgment of the application of various therapeutic maneuvers, especially hemodialysis and ventilator care."[9]

On January 24, 1981, Clark submitted memoranda to Daniels wherein he was critical of the treatment which Duke, Neal and Stroud had received.[10]

In particular, Clark commented that Duke was not an appropriate candidate for hemodialysis, that hemodialysis was not a constructive form of treatment for Neal, and that the application of hemodialysis and ventilator support to Stroud "follows a similar pattern ... to proceed with extra-corporeal support ... in the face of overwhelming odds and complicating medical factors."[11]

On January 26, 1981, Mufson advised Daniels that "in none of these patients, [Neal, Rogers and Duke [12]] was renal dialysis clearly indicated nor was the rationale for it substantiated in the chart[s] ... In these cases, management plans were inadequately documented in the charts, progress notes were infrequent, flow sheets were not maintained, [and] some therapeutic measures were inconsistent ...."[13]

On January 27, 1981, Sharma, in responding to Daniels' request that he review Neal's, Rogers', Duke's and Stroud's charts, expressed the opinion that Neal "should not have been considered for hemodialysis", that neither "respiratory support ..., nor hemodialysis were justified" in Rogers' case, given "her poor general condition and multiple irreversible problems", and that Duke, "who was irreversibly ill ..., was given excessive amounts of crystaloids to jack up ... [his] blood pressure ... [even though he] was oliguric." With respect to Stroud, Sharma concluded that "short term ventilatory and renal support" might have been justified.[14]

After he had received Drs. Clark's, Mufson's and Sharma's memoranda, Daniels sent the following letter to the Plaintiff.[15]

"February 5, 1981

Michael J. Kinney, M.D.

First National Bank Building

Huntington, West Virginia 25701

---

**6.** *See* Article V, Section 3, subsection 2 of the Bylaws.

**7.** *See* Daniels' deposition of pp. 47–50, and 62–63.

**8.** *See* Daniels' deposition at pp. 47–50.

**9.** *See* Exhibit 6, attached to J.D. Daniels' affidavit in support of the Defendants' motion for summary judgment.

**10.** Dr. Clark recounted the entries made on Rogers' chart, but did not comment on the treatment of this patient.

**11.** *See* Exhibit 8, attached to J.D. Daniels' affidavit in support of the Defendants' motion for summary judgment.

**12.** Dr. Mufson did not comment on Stroud.

**13.** *See* Exhibit 9, attached to J.D. Daniels' affidavit in support of the Defendants' motion for summary judgment.

**14.** *See* Exhibit 10, attached to J.D. Daniels' affidavit in support of the Defendants' motion for summary judgment.

**15.** *See* Exhibit 1 to the complaint, filed June 3, 1981.

Dear Dr. Kinney:

As Chief of the Medical Section of Cabell Huntington Hospital, I wish to express my concern about your management of patients at Cabell Huntington Hospital. I have reviewed the charts of your patients on chronic hemodialysis. The written notes and copies of office visits are more frequent than last summer, but the documentation of adequate supervision is still inadequate. I do not feel that a complex procedure such as hemodialysis can be conducted mostly over the telephone.

Of a more serious nature, I am even more concerned regarding the handling of acute dialysis patients. I have reviewed the following charts in detail: Nos. 405–165–3 [Duke], 417–917–0 [Stroud] and 426–443–6 [Rogers].[16]

I could not find a clear indication why these patients were placed on hemodialysis (or even considered for this procedure). As there is an obvious difference in our assessment of the management, I have asked three independent members of the Section of Internal Medicine to review these same charts. Each of these physicians found no rational nor clear indication for hemodialysis. Two of the three physicians did not feel that the charts contained an adequate assessment and plans for the patients.

I will continue to monitor your cases at Cabell Huntington Hospital. Please make every effort to document the reasons for the use of acute dialysis. I would urge restraint in the use of heroic measures in the face of clearly irreversible illness. I would caution you that your privileges for hemodialysis may be restricted if this pattern of management and lack of adequate documentation continues.

Sincerely,

J.D. Daniels, M.D.

Chief of Medicine

cc: Jack Baur, M.D., President, Medical & Dental Staff, E.J. Humphrey, III, M.D., Chairman, Credentials Committee, Raymond Champ, President"

This letter, which is the sole basis of the Plaintiff's action, was published to Jack Baur, E.J. Humphrey, III, and Raymond Champ.[17] Baur, who was the President of the Hospital's medical staff, was responsible for the overall supervision of the medical staff and was a member of the staff's executive committee, which had the authority to take corrective measures concerning a staff member's privileges at the Hospital.[18] Humphrey was the Chairman of the staff's Credentials Committee which annually reviewed the performance of staff members.[19] Champ, who was the President of the Hospital, was the liaison between the Hospital's medical staff and its Board of Trustees and was responsible for coordinating the credentialing and peer review processes.[20] Champ was also an *ex-officio*, non-voting member of the medical staff's Executive Committee.[21]

## II. *Common Law Defamation*

■ In order to preclude the entry of summary judgment in a common law defamation action brought by a "private person" against non-media defendants, there must exist material issues of fact on the following elements:

"(a) A false and defamatory statement concerning another;

(b) An unprivileged publication to a third party;

---

**16.** In his letter of February 5, 1981, Daniels, apparently through inadvertence, did not refer to the review of Neal's chart. *See* Daniels' deposition at pp. 47–50.

**17.** *See* Exhibit 1 to the complaint, filed June 3, 1981.

**18.** *See* Article X, Section 1, subsection 2, Article X, Section 2, subsection 2 and Article VIII of the Bylaws.

**19.** *See* Article X, Section 2, subsection 3 and Article VI, Section 3 of the Bylaws.

**20.** *See* Articles VI and IX of the Bylaws.

**21.** *See* Article X, Section 2, subsection 2 of the Bylaws.

(c) Fault amounting ... to negligence [22] on the part of the publisher; and

(d) Either actionability of the statement irrespective of special harm [23] or the existence of special harm caused by the publication."

*Restatement (2d) of Torts,* § 558 at 155 (1977).

■ On a prior occasion, this Court held "that 'substantial truth' constitutes an absolute defense in a civil libel action brought by a public official in West Virginia." *See Dostert v. Washington · Post Company,* 531 F.Supp. 165, 168 n. 9 (N.D.W.Va.1982), *citing Sprouse v. Clay Communication, Inc.,* 211 S.E.2d 674 (W.Va.) *cert. denied,* 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107 (1975). While the West Virginia Supreme Court of Appeals has not addressed the issue, other courts have held that "substantial truth" constitutes an absolute defense in a common law defamation action brought by a "private person" against a non-media defendant. *See e.g., Gomba v. McLaughlin,* 180 Colo. 232, 504 P.2d 337

(1973). After having thoroughly considered the issue, this Court is convinced [24] that the West Virginia Supreme Court of Appeals would follow the current trend [25] of the law and hold that "substantial truth" constitutes a defense [26] in a common law defamation action brought by a "private person" against a non-media defendant.

■ In the case at bar, the Plaintiff maintains that Daniels' letter is false in that it implies that Duke, Stroud and Rogers were each placed on hemodialysis when, in fact, only Stroud had received this treatment.[27] In doing so, however, the Plaintiff ignores the parenthetical clause "or even considered for this procedure", which lends substantial truth to the "offensive" sentence, given its "sting" that these patients were inappropriate candidates for hemodialysis and the fact that the Plaintiff had at least considered administering this treatment to Duke and Rogers. Given its substantial truth, and the fact that Daniels only made a limited publication of the letter in the context of a health care peer review

22. *Cf., Havalunch, Inc. v. Mazza,* 294 S.E.2d 70 (W.Va.1981).

23. Under West Virginia law, "[A] writing which ... charges a person with incapacity in his trade or profession is actionable without allegation or proof of special damages, in the absence of proof of legal excuse therefor or justification thereof." *Hancock v. Mitchell,* 83 W.Va. 156, 98 S.E. 65 (1919).

In advancing the proposition that *Hancock* is no longer controlling in this jurisdiction, the Defendants rely on *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 348–50, 94 S.Ct. 2997, 3011–12, 41 L.Ed.2d 789 (1973) which held that a "private person" who does not prove actual malice on the part of a media defendant may only recover for actual damages. These non-media defendants' reliance on *Gertz* is misplaced, inasmuch as its holding was "grounded in the constitutional command of the First Amendment," a concern which is not present in the action at bar.

24. "In making determinations of state law in diversity cases under the doctrine of *Erie Railroad Company v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] ... (1938) where there is no controlling state precedent, a federal court must look to the probable analysis the forum state's highest court would employ. *Patrick v. Sharon Steel Corp.,* 549 F.Supp.

1259 (N.D.W.Va.1982); *Pauley v. Combustion Engineering, Inc.,* 528 F.Supp. 759 (S.D.W.Va. 1981)."
*Mutafis v. Erie Insurance Exchange,* 561 F.Supp. 192, 199 n. 10 (N.D.W.Va.1983).

25. "The trend of the law is toward the recognition of *substantial* rather than *absolute* truth as a defense to allegedly libelous statements. Prosser, *Law of Torts,* 798 (4th Ed.1971) and cases cited therein."
*Gomba v. McLaughlin, supra,* 504 P.2d at 339 (emphasis in original). *See also Restatement (2d) of Torts,* § 581A, Comment f at 236–37 (1977).

26. Absent any First Amendment concerns, under West Virginia law, to justify an allegedly libelous publication, the writing, in addition to being "substantially" true, must have been "published with good motives, and for justifiable ends." W.Va. Const., Article III, § 8.

27. "I have reviewed the following charts in detail: ... [Duke, Stroud and Rogers].
I could not find a clear indication why these patients were placed on hemodialysis (or even considered for this procedure)."
*See* Kinney's deposition at 63. *See also* Exhibit 11, attached to Raymond Champ's affidavit in support of the Defendants' motion for summary judgment.

procedure,[28] the Court finds that the Defendants are entitled to summary judgment on the Plaintiff's common law defamation claim.

### III. *Statutory Defamation* [29]

 *W.Va.Code,* § 55–7–2 creates a cause of action "for insulting words which tend to violence and a breach of the peace". The "(1) lack of a publication requirement, and (2) a cause of action for insulting words which tend to violence and a breach of the peace are the only differences between the law of the insulting words statute and common law defamation. In all *other* respects the substantive law of the statute is identical to that of common law defamation." *Mauck v. City of Martinsburg,* 280 S.E.2d 216, 219–20 (W.Va.1981). Accordingly, even assuming that Daniels' letter did tend to violence and a breach of the peace, the Court nonetheless finds that the Plaintiff has not stated a cause of action against the Defendants under the insulting words statute, inasmuch as the letter was substantially true [30] and was issued in the context of a health care peer review procedure.[31] The Court concludes, therefore, that the Defendants are entitled to summary judgment on the Plaintiff's statutory defamation claim, as well.[32]

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

---

**28.** Even though the Plaintiff has failed to file any response to the Defendants' motion for summary judgment, the Court has carefully scrutinized the record in this action and has found no basis upon which the trier of fact could conclude that Daniels had any malicious or unjustified end in mind when he published the complained of letter to Baur, Humphrey and Champ. *See* n. 26, *supra.*

*See also,· W.Va.Code,* § 30–3C–2, which provides:

"(a) Notwithstanding any other provision of law, no person providing information to any review organization shall be held, by reason of having provided such information, to be civilly liable under any law, unless: (1) such information is unrelated to the performance of the duties and functions of such review organization, or (2) such information is false and the person providing such information knew, or had reason to believe, that such information was false."

(b) A review organization, or any member, agent or employee thereof who, in the absence of malice and gross negligence, acts upon or furnishes counsel, services or information to a review organization shall be immune from liability for loss or injury to the person whose activities are being reviewed." On the basis of the undisputed facts before it, the Court finds that Daniels did not exceed this statutory privilege. *Cf.,* Syl. point 2 of *England v. Daily Gazette Company,* 143 W.Va. 700, 104 S.E.2d 306 (1958).

**29.** *W.Va.Code,* § 55–7–2, provides as follows:

"All words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon."

**30.** *See* Part II, *supra.*

**31.** *See* n. 27, *supra.*

**32.** The Court has reached this conclusion, notwithstanding the last sentence of *W.Va.Code,* § 55–7–2. *See Guthrie v. Great American Insurance Co.,* 151 F.2d 738 (4th Cir.1945).